UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                        CIVIL ACTION

VERSUS                                          NO. CR 06-241

JOHN SALTZMAN                                   SECTION "F"


ORDER AND REASONS

Before the Court is the defendant's motion to dismiss counts of the superseding indictment.  For the reasons that follow, the defendant's motion is GRANTED in part AND DENIED in part.

Background

The defendant in this case is Michael Saltzman.  Saltzman was employed years ago as a part-time sheriff's deputy, when he acquired a service revolver.  In 2000, he pled guilty to the unauthorized transportation of an illegal alien in the Eastern District of New York and was sentenced to fifteen months incarceration.  Because of the conviction, he was required to forfeit his gun, but he was not instructed on how to do so.  He sold the gun in November 2000 to his friend, Kevin Turner, who operates a security company.  Six years later, that event came back to haunt him.

During Mardi Gras 2006, Saltzman states that Kevin Turner's security company was shorthanded and that Turner asked him to work

1

for him, monitoring a ship at the Port of New Orleans. Saltzman dressed in security apparel, claims he placed a toy training pistol in his thigh holster, and reported for work on the ship.

In a separate chain of events, a Customs and Border Protection Officer, William Brumley, had been called to the ship. He found a .357 revolver in a common room of the ship where security guards take breaks, but was unable to identify its owner. He approached Saltzman, who says that he recognized Brumley as his arresting officer in 2000. Saltzman gave a false name to Brumley, but stated that he recognized the pistol as the one he previously owned. Saltzman claims that he found out later that Kevin Turner, to whom he had sold the gun in 2000, brought the gun aboard the ship for use by his security officers.

The Government filed a Bill of Information, charging Saltzman with one count of being a felon in possession of a firearm. Saltzman pled guilty to the charge on October 26, 2006 before this Court. He ultimately fired his attorney and retained new counsel. On February 28, 2007, this Court allowed Saltzman to withdraw his guilty plea and enter a plea of not guilty. The Government then filed a superseding indictment against him, expanding the indictment to a variety of five counts from one count of felon in possession.

Saltzman now moves to dismiss four of the five counts of the superseding indictment, arguing that the Government's new

indictment is vindictive.  He also contends that Counts 4 and 5 are multiplicitous.

I.

Although one may be penalized for violating the law, he may not be punished for exercising a protected statutory or constitutional right.  <u>Bordenkircher v. Hayes</u>, 434 U.S. 357, 363 (1978).  The United States Supreme Court has recognized that a prosecutor in the pretrial stage may exercise broad discretion in bringing legitimate charges against a defendant and that a presumption of vindictiveness does not automatically attach to all post-trial or pretrial government actions when additional charges are brought.  <u>U.S. v. Goodwin</u>, 457 U.S. 368, 380-382 (1982).  "An initial decision should not freeze future conduct"; therefore, "the individual charges filed by a prosecutor may not reflect the extent to which an individual is legitimately subject to prosecution." <u>Id.</u> at 382 & n.14.  The burden is on the defendant to prove objectively that the Government's charging decision was motivated by its desire to punish the defendant for pursuing a guaranteed right, such as to appeal or withdraw a guilty plea and plead not guilty.  <u>Id.</u> at 375 ("The Due Process Clause is not offended by all possibilities of increased punishment ... but only by those that impose a realistic likelihood of 'vindictiveness.'" (quoting <u>Blackledge v. Perry</u>, 417 U.S. 21, 27 (1974)).

In <u>United States v. Krezdorn</u>, 718 F.2d 1360 (1983), the United States Court of Appeals for the Fifth Circuit defined the test for whether or not a prosecutorial decision is vindictive.  First, this Court must examine the totality of the circumstances leading to the prosecutor's actions.  <u>Id.</u> at 1365.

> If any objective event or combination of events in those proceedings should indicate to a reasonable minded defendant that the prosecutor's decision was motivated by some purpose other than a vindictive desire to deter or punish [], no presumption of vindictiveness is created.... If, on the other hand, the course of events provides no objective indication that would allay a reasonable apprehension by the defendant that the more serious charge was vindictive, i.e., inspired by a determination to "punish a pesky defendant for exercising his legal rights," a presumption of vindictiveness applies which cannot be overcome unless the government proves by a preponderance of the evidence that events occurring <u>since the time of the original charge decision</u> altered that initial exercise of the prosecutor's discretion.

<u>Id.</u> (quoting <u>Hardwick v. Doolittle</u>, 558 F.2d 292, 301 (5th Cir. 1977)(emphasis added).  Initially, the burden of proving vindictiveness is on the defendant, but once the presumption of vindictiveness is established, the burden shifts to the prosecutor to rebut the presumption.  <u>Id.</u>  Examples of acceptable proof that would negate vindictiveness include "proof of mistake or oversight in his initial action, a different approach to prosecutorial duty by a successor prosecutor, or public demand for prosecution on additional crimes allegedly committed...."  <u>Id.</u> at 1364 (citing <u>Hardwick</u>, 558 F.2d at 301).

II.

Saltzman moved to withdraw his guilty plea over 100 days after his admissions and guilty plea in this Court, stating that he received poor advice from his then-attorney who told him to "focus on leniency and not to make any indication of his innocence at any proceeding." Saltzman claimed he was induced to enter a guilty plea based on a factual basis that is contrary to the actual facts in this case, facts which are unusual, if not strangely bizarre.

This Court allowed Saltzman to withdraw his plea because the factual basis to which he pled guilty "reflect[ed] a serious question or at best confusion about the facts and enough confusion to cast a question on reasonable doubt." Tr. 17:25-18:1-2, Feb. 28, 2007. In the original Bill of Information, the Government charged Saltzman with one count of being a felon in possession. The gun he was alleged to have possessed was a Smith & Wesson .357 caliber revolver. But the alleged facts in the Bill of Information did not support a charge of possession.[1]

After the Court allowed Saltzman to change his plea, the U.S. Attorney filed a Superseding Indictment on March 22, 2007, adding several additional counts of being a felon in possession of a 9mm

---

[1] The facts as alleged in the single-count Bill of Information confused two guns that were on the scene at the time of the incident: a .357 revolver that was found in a room on the ship, and a supposedly toy 9mm Beretta that was holstered on the defendant's thigh. The bill also confused the concepts of ownership with actual possession.

handgun and .40 caliber Beretta handgun (Counts 2 and 3), one count of making an oral misrepresentation to a government officer (Count 4), and one count of making a written misrepresentation to a government officer (Count 5).  Citing United States v. Meyer, 810 F.2d 1242 (D.C. Cir. 1987), the defendant makes an analogous argument that the timing of and increase in the number and type of allegations against him after he was allowed to withdraw his guilty plea demonstrates the Government's vindictiveness.  The Fifth Circuit instructs this Court to examine the prosecutor's actions in the context of the entire proceedings.  While Meyer is not binding, it does give this Court guidance about those actions by the prosecutor that would support a finding of vindictiveness.

In Meyer, 200 demonstrators were arrested for demonstrating outside the White House without a permit.  Although some pled guilty, others did not, and the Government added a charge of obstructing the sidewalks outside the White House to the indictments of those who did not plead guilty.  Id. at 1244.  The court dismissed the entire indictment on the ground that it was brought in retaliation for defendants' exercise of the right to plead not guilty.  Id. at 1245.  The court reasoned that "the simplicity and clarity of both the facts and law underlying these prosecutions heightens the suspicion of prosecutorial vindictiveness." Id. at 1246.  In Meyer, the conduct and the law relating to that conduct were straightforward; "[t]hus, the

6

suspicion must grow that the prosecutor increased the charges not because of any further factual investigation or legal analysis, but because the defendant[] chose to exercise their constitutional right...." Id. The Meyer court also considered the Government's conduct after its decision to increase the charges against the defendants, which included moving to drop the additional charge in the indictment as soon as the hearing on prosecutorial vindictiveness commenced.

The Government in this case misquotes and erroneously relies on United States v. Goodwin, 457 U.S. 368 (1982), to argue that it may bring additional charges at this time without review. The Government implies that the Goodwin Court unconditionally allows a prosecutor to forego legitimate charges to save time and the expense of a trial, and may later file additional charges if plea negotiations break down. This statement, regrettably, is misquoted and taken out of context. Goodwin holds simply that a presumption of vindictiveness does not attach automatically when a prosecutor brings more serious or additional charges against a defendant, whether post-trial or pretrial in plea negotiations. The Goodwin Court, drawing attention to the result in Bordenkircher v. Hayes, 434 U.S. 357 (1978), merely recognized the legitimacy of the plea negotiation process, allowing a prosecutor to abandon charges already brought (as a carrot to encourage a plea or to save the time and expense of a trial) or to threaten or actually file

additional charges in the event that an "initial expectation that a defendant would plead guilty to lesser charges proves unfounded." Goodwin, 457 U.S. at 380. Although Goodwin certainly instructs that a presumption of vindictiveness is not called for, the Government's actions must still be reviewed according to the process outlined by the Fifth Circuit because the defendant has alleged vindictiveness on the part of the Government. Thus, this Court's scrutiny within the parameters of Krezdorn is not only proper ... it is required.

III.

The Government filed a confusing and defective Bill of Information, attempting to allege only one count of Saltzman being a felon in possession of a .357 revolver. Neither the possession of a 9mm handgun (or any other gun) nor the misrepresentations that Saltzman made to the government official were included. Presumably, these were legitimate charges that could have been filed at the time, but certainly the Government is under no obligation to bring as many charges as possible against the defendant, particularly when a plea is expected and subsequently obtained.

But then the defendant was allowed to withdraw his plea, not because he presented new evidence of his innocence or because of the ineffective assistance of counsel, but, squarely, because the

Government's Bill of Information was egregiously defective. The addition of Count 2 may be plausible at this time, and an argument can be made that the original Bill of Information sought to charge Saltzman with possession of the 9mm handgun, but was ineptly drafted and was confusing.[2] But the addition of Counts 3 through 5 in the Superseding Indictment does not pass the smell test for this Court.

This is a factually sparse case. Its simplicity, like the facts in Meyer, invokes suspiciousness of prosecutorial vindictiveness. At the time of the original single-count indictment, the Government had completed its investigation and had full knowledge of the few facts in this simple case. No complex legal analysis or further investigation has been conducted which would uncover additional facts. Also, similar to the Government's actions in Meyer, at the onset of a vindictiveness hearing, the

---

[2] At the time of the original indictment, the inclusion of a count for being a felon in possession of a 9mm handgun would have been understandable in light of the fact that the Customs agent observed, but did not confiscate, what appeared to be a handgun strapped in a thigh holster on the defendant. A prosecutor can "negate vindictiveness by proof of mistake or oversight in his initial action," United States v. Krezdorn, 718 F.2d 1360, 1364 (5th Cir. 1984)(explaining the holding of Hardwick v. Doolittle, 558 F.2d 292 (5th Cir. 1977)), and, arguably, the Government can justify that the subsequent addition of this count is an action to remedy the deficiencies in the Bill of Information pointed out by the Court at the hearing allowing the defendant to withdraw his plea. What is unclear at this time, however, is whether the Government has investigated and accepted the defendant's allegation that the gun was actually just a toy gun, which could cause the allegation in Count 2 to fail as a matter of law.

Government here has acquiesced to the defendant's request to dismiss Count 3 of the indictment, stating only that it "does not plan to present evidence" that the defendant is a felon in possession of the .40 caliber Beretta handgun. The Government's automatic willingness to drop Count 3 of the indictment, a count alleging four-year-old misconduct involving a gun to which no reference has been made in the events leading up to the Superseding Indictment, is of concern to the Court. Counts 4 and 5, charging Saltzman with false statements to the Customs agent, come on the heels of oral statements made in open court by Saltzman's new counsel, to persuade the Court to allow his client to withdraw the guilty plea:

> I look at the government's objection and what they have is -- it's fine. They have a boilerplate argument on withdrawals, what the Powell case says, that Your Honor has all the discretion in the world. You don't need to be told that. I don't need to be told that. What they never address is the only relevant fact here. There's no evidence supporting the conviction of this man for being a felon in possession.
> What we ask for is our day in court. Maybe he should have done it earlier. I think he tried to do it as quickly as he could. Apparently he did what he did under the advice of counsel. All we are saying is I think this is one of those unique exceptions where he ought to be afforded his day in court. Your Honor can deny it, but I think we have gone well beyond the requirement of being able to demonstrate -- <u>we'll plead him guilty to stupidity. We'll concede he misrepresented himself to an ICE officer when he said he was Milonas</u>, but what he is not guilty of being is a felon in possession. For that, we think he should have his day in court and Your Honor should exercise your discretion to grant the motion. Thank you, Judge.

Tr. 11:1-20, Feb. 28, 2007 (emphasis added). Although the

misrepresentations were legitimate charges at the outset of these proceedings, the timing of their addition now causes the Court to have serious doubts about the Government's motivation behind them.

Counts 3-5 are not charges that were originally filed and are now being withdrawn by the Government to save judicial resources. And the argument that the charges appear now because the Government's "initial expectation" that Saltzman would plead guilty has proven unfounded is suspect at best. It seems reasonable to observe that in the context of these proceedings, the Government's actions in adding Counts 3-5 of the Superseding Indictment would cause a reasonable defendant to conclude that they were motivated by vindictiveness.

### III.

Pursuant to the Fifth Circuit's analysis in Krezdorn, the burden shifts to the Government, once a presumption of vindictiveness has been established. To rebut this presumption, the Government must "prove[] by a preponderance of the evidence that events occurring since the time of the original charge decision altered that initial exercise of the prosecutor's discretion." United States v. Krezdorn, 718 F.2d 1360, 1365 (1983). The Government has failed to do so. Although the Government may have had unimpeachable reasons for adding charges against Saltzman in its Superseding Indictment, the Government has

11

not offered any to the Court and, more importantly, the record does not reflect that any added investigation or events that occurred since the time of the original charge that would justify the addition of more charges. The Government submits no rebuttal other than its limp assertion that subsequent indictments are always permissible under Supreme Court and Fifth Circuit precedent, which is, at best, an incomplete statement of the law.

Accordingly, the Court finds that the actions of the Government in charging Counts 3-5 of the Superseding Indictment are vindictive. The defendant's motion to dismiss counts of the indictment is GRANTED in part AND DENIED in part. Counts 3-5 are dismissed, but Count 2 regarding the 9mm weapon will remain intact.[3]

New Orleans, Louisiana, June 6, 2007.

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE

---

[3] Because Counts 4 and 5 have been dismissed as vindictive acts of the Government, the Court is not required to review them for multiplicity.